Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1204 | **DATE** | 7/21/2000 |
| **CASE TITLE** | Saad vs. Shimano | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  The Court issues the following rulings on plaintiff's motions in limine [doc. # 18] and defendant's motions in limine [doc. # 19]: plaintiff's motion no. 2 is granted in part and denied in part; plaintiff's motion nos. 3, 8, 28, 29, and 30 are granted; and plaintiff's motion nos. 1, 5, 20, 23-27, and 31 are denied. The defendant's motion nos. 5, 8, and 11 are granted; defendant's motion nos. 4, 7, and 10 are denied; and defendant's motion no. 12 is granted in part and denied in part with respect to 12 (d),  and is denied with respect to 12 (a), (b) and (j).
**ENTER MEMORANDUM OPINION AND ORDER**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | `JUL 2 4 2000` | | |
| | Notified counsel by telephone. | | date docketed | | **30** |
| | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | 7/20/2000 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| JJK | courtroom deputy's initials | `00 JUL 21 AM 10:31` | JJK mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | | | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JEFFERY SAAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98 C 1204 |
| vs. | ) | |
| | ) | Magistrate Judge Schenkier |
| SHIMANO AMERICAN CORP., | ) | |
| | ) | |
| Defendant. | ) | **DOCKETED** |
| | | JUL 2 4 2000 |

### MEMORANDUM OPINION AND ORDER

This products liability case is set for a jury trial on August 28, 2000. In anticipation of trial, the plaintiff, Jeffery Saad ("plaintiff"), and the defendant, Shimano American Corporation ("defendant" or "Shimano"), have filed various motions in limine.

The plaintiff has filed thirty-one motions in limine [doc. # 18-1 through 18-31], but since that filing, the parties have stipulated to sixteen of the motions: Nos. 2 (with respect to contributory negligence) 4, 6, 7, 9-19, 21, and 22. Pursuant to an order dated March 29, 2000, this Court granted those sixteen motions in limine, leaving fifteen for resolution by the Court: nos. 1, 2 (with respect to assumption of risk and misuse), 3, 5, 8, 20, and 23-31.

For its part, Shimano has filed twelve motions in limine [doc. # 19-1 through 19-12]. The parties have stipulated to three of those motions and part of another (nos. 1, 2, 3 and 12(c), (e), (f), (g), (h), and (i)); Shimano has withdrawn two other motions (nos. 6 and 9). Those stipulations and withdrawals also were memorialized in the Court's March 29, 2000 order. Thus, Shimano now seeks a ruling on the remaining seven defense motions: nos. 4, 5, 7, 8, 10, 11, and 12(a), (b), (d), and (j).

After careful review of these motions and the materials filed in connection with them, the Court rules as follows:

**Plaintiff's Motions.**

    A.    Motion no. 1, which seeks to bar defendant's expert testimony, is denied;

    B.    Motion no. 2, which seeks to strike and bar evidence of the defenses of assumption of risk and misuse, is granted in part and denied in part;

    C.    Motion no. 3, which seeks to bar defendant from arguing that plaintiff has the burden of proving feasible alternative design, is granted;

    D.    Motion no. 5, which seeks to bar a jury instruction on compliance with industry standards, is denied;

    E.    Motion no. 8, which seeks to bar argument regarding the effect of a large damage award on the public, is granted;

    F.    Motion no. 20, which seeks exclusion of certain defense witnesses, is denied;

    G.    Motion no. 23, which seeks to bar argument and comment regarding any alleged unavoidable unsafe condition and/or open and obvious danger of defendant's product, is denied;

    H.    Motion no. 24, which seeks to bar argument and comment regarding substantial change or alteration of the defendant's product, is denied;

    I.    Motion nos. 25-27, which seek to allow questioning of potential jurors on issues related to insurance, are denied;

    J.    Motion no. 28, which seeks to allow questioning of potential jurors on issues related to large damage awards, is granted;

    K.    Motion no. 29, which seeks to bar assertion of a state of the art defense, is granted;

2

L.     Motion no. 30, which seeks exclusion of evidence concerning pedal designs and clip devices used by other manufacturers, is granted; and

M.     Motion no. 31, which seeks to bar argument and comment regarding the safety of defendant's product as compared to clipless pedal products of other manufacturers, is denied as moot.

**Defendant's Motions.**

A.     Motion no. 4, which seeks to exclude evidence regarding plaintiff's loss of future earnings and/or earnings capacity, is denied;

B.     Motion no. 5, which seeks to exclude evidence that the warnings and instructions that accompanied the product were inadequate, is granted;

C.     Motion no. 7, which seeks to bar expert opinions other than those expressed at the deposition of plaintiff's expert, is denied;

D.     Motion no. 8, which seeks to bar references to defendant as a Japanese corporation, is granted;

E.     Motion no. 10, which seeks to bar plaintiff's expert from testifying, is denied;

F.     Motion no. 11, which seeks to bar evidence and argument regarding the feasibility of alternative designs, is granted; and

G.     Motion no. 12, which seeks to bar "[v]arious . . . inflammatory and prejudicial remarks[,]" is granted in part and denied in part.

## I.

The uncontested facts, as set forth in the final pretrial order, are as follows. In 1995, the plaintiff purchased a Shimano "clipless pedal" (Model PD-M 737) and installed it on his bicycle. The Shimano "clipless pedal" is designed to be used with a shoe that has a cleat which fits into the

3

pedal. The plaintiff purchased compatible bicycle shoes with cleats ("multiple release" SH55 cleats). The defendant, Shimano, advertised, distributed and sold the pedal, shoes and cleats ("clipless pedal system") through a string of distributors.

The plaintiff purchased his clipless pedal system through one of these non-party distributors, replaced the standard toeclip pedals that were sold with his Trek bicycle, and installed the clipless pedal system on his bicycle in a proper manner. The tension on the pedal was properly adjusted. In fact, for at least six months before the date of the accident, the plaintiff used the clipless pedal system without incident, riding at least 50-100 miles prior to the accident. During this six month period, the plaintiff sustained one fall where he fell sideways off the bicycle; at that time, his feet released from the pedals. During normal use, the plaintiff also had no problem releasing his feet from the pedals when he stopped the bicycle.

On April 20, 1996, the plaintiff injured his right ankle when he fell off of his bicycle in a backward direction. To avoid the fall, the plaintiff attempted to "pop out" of the fall by attempting a "pogo-like maneuver" which caused plaintiff and his bicycle to flip backward, contacting the road. During the fall, the plaintiff's left foot "clicked out" of the bicycle pedals, but his right foot did not release from the pedal until he sat up on the ground after the fall. The plaintiff received immediate and ongoing medical treatment for injuries to his right ankle which included surgery and physical therapy. The Shimano bicycle pedals used by the plaintiff on the day of his accident are the product at issue in this case.

## II.

The plaintiff has filed fifteen motions in limine that require resolution by the Court (nos. 1, 2 -- with respect to assumption of risk and misuse -- 3, 5, 8, 20, and 23-31). By those motions, the plaintiff seeks to: bar certain testimony of defendant's expert (no. 1); strike and bar certain defenses

4

(nos. 2 (with respect to assumption of risk and misuse) and 23); bar evidence and arguments relating to alternative designs (nos. 3, 29-30); allow certain voir dire questions to be asked of prospective jurors (nos. 25-28); and bar what plaintiff considers to be prejudicial comments, arguments, instructions, and witnesses (nos. 5, 8, 20, 24 and 31). We will address each motion by grouping the requests under the broader subject matter categories to which they relate.

## A.  *Defendant's Expert Testimony (Plaintiff's Motion No. 1).*

In motion in limine no. 1, the plaintiff seeks to bar defendant's expert, David A. Mitchell, from testifying that:

(a)   In the majority of the possible foot positions within the normal pedal rotation, the foot or leg of the rider will contact the bicycle frame and be prevented from achieving the necessary conditions for foot release.

(b)   Clipless pedals are not specifically designed to release in the event of a fall.

(c)   The forces exerted on the pedal system in falling backward are generally perpendicular to the fall and the pedals are not intended to release in that direction.

(d)   That plaintiff's right foot contacted the bicycle and did not rotate sufficiently to result in a release.

The Supreme Court has made it clear that the courts must take seriously their "gatekeeper" function under Fed.R.Evid. 702, and allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness. *Kumho Tire Co, Ltd. v. Carmichael,* 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). The Seventh Circuit has recently explained the standards for discharging that gatekeeper function under Rule 702, in light of *Kumho* and *Daubert. See, e.g., Smith v. Ford Motor Co.,* No. 99-2656, 2000 WL 709895 (7th Cir., June 2, 2000). Because *Smith* is the Seventh Circuit's most recent teaching on this subject, we quote from the opinion at length:

5

The admission of expert testimony is specifically governed by Federal Rule of Evidence 702 and the principles announced in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The Supreme Court in *Daubert* interpreted this rule to require that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. In other words, as a threshold matter "a district court is required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue." *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). When making these determinations, the district court functions as a "gatekeeper" whose role is "to keep experts within their proper scope, lest apparently scientific testimony carry more weight with the jury than it deserves." *See De Paepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998).

In analyzing the reliability of proposed expert testimony, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions. *See Kumho*, 526 U.S. at 153. An expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. While "extensive academic and practical expertise" in an area is certainly sufficient to qualify a potential witness as an expert, *Bryant v. City of Chicago*, 200 F.3d 1092, 1098 (7th Cir. 2000), "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience," *Walker*, 208 F.3d at 591. . . . Thus, a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area.

A court's reliability analysis does not end with its conclusion that an expert is qualified to testify about a given matter. Even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method." *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999). However, we emphasize that the court's gatekeeping function focuses on an examination of the expert's methodology. The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment. *See Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate"); *Walker*, 208 F.3d at 587 (stating that when

6

addressing whether expert testimony is reliable the district court should not consider the "factual underpinnings" of the testimony but should determine whether "[i]t was appropriate for [the expert] to rely on the test that he administered and upon the sources of information which he employed").

\* \* \*

The *Daubert* standard applies to all expert testimony, whether it relates to areas of traditional scientific competence or whether it is founded on engineering principles or other technical or specialized expertise. *See Kumho,* 526 U.S. at 141. In *Daubert,* the Supreme Court outlined four factors that may be pertinent to the district court's analysis of expert testimony. Those traditional factors are: 1) "whether [the expert's theory] can be (and has been) tested"; 2) "whether the theory or technique has been subjected to peer review and publication"; 3) "the known or potential rate of error"; and 4) "general acceptance" among the relevant scientific community. *Daubert,* 509 U.S. at 593-94. However, as the Supreme Court has repeatedly emphasized, the Rule 702 test is a flexible one, and no single factor is either required in the analysis or dispositive as to its outcome. *See Kumho,* 526 U.S. at 141 ("[T]he test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case."); *Daubert,* 509 U.S. at 594 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one."). The trial court must use the criteria relevant to a particular kind of expertise in a specific case to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Id.* at \*\*2-4.

In this case, plaintiff does not challenge Mr. Mitchell's qualifications to testify about the clipless pedal system used by the plaintiff at the time of his accident. Nor does the plaintiff challenge the relevancy of the proposed expert testimony; indeed, there is no question that these opinions (if reliable) would assist the jury in understanding and resolving the disputed claims in this case. Rather, the plaintiff challenges the reliability of Mr. Mitchell's opinions. Therefore, the Court focuses on whether, based on the methodology he employed to reach them, each of Mr. Mitchell's opinions is sufficiently reliable, to meet the threshold standard for admissibility.

7

### 1.     Inward Pedal Release

In his expert report, Mr. Mitchell opined that,

> . . . as a practical matter, attempted foot release by heel rotation toward the bicycle frame is not a desirable means of foot removal from the pedals. This is because for the majority of the possible foot positions within the normal pedal rotation, the foot or leg of the rider will contact the bicycle frame and be prevented from achieving the necessary conditions for foot release. It is the outward, away from the frame, rotation that is the standard and accepted release means.

(Pl.'s Mem., Ex. A at 4).   Mr. Mitchell further opined that it is likely that plaintiff's right foot "contacted the bicycle and did not rotate sufficiently to result in a release" (*Id.*).

The plaintiff contends that Mr. Mitchell did not perform the tests necessary to render these opinions reliable:

> he never tested the release of the cleat in the inward position nor did he make any measurements concerning the distance between a rider's foot or leg and the frame of the bicycle. He also did not make any measurements concerning the amount of distance a foot would have to be rotated to release from the cleat.

(Pl.'s Mem. at 3). The plaintiff also argues that these opinions "are not based on personalized experience or any specialized knowledge in the area" of bicycle riding (Pl.'s Mem. at 4). According to plaintiff, although an expert "can tie observations to conclusions through the use of specialized experience," Mr. Mitchell did not "even attempt[] to release the pedal in the inward mode during his inspection or in his bicycle riding experience" (Pl.'s Mem. at 4).

Having reviewed Mr. Mitchell's expert report (Pl.'s Mem., Ex. A), and Mr. Mitchell's excerpted deposition testimony (Pl.'s Mem., Ex. B), the Court finds that Mr. Mitchell's opinion regarding inward pedal release and the contact of a bicycle user's foot with the bicycle frame during "normal pedal rotation" has sufficient indicia of reliability to be admissible under Rule 702 and the controlling case law.   Mr. Mitchell's opinion is based on knowledge derived both from specialized engineering principles and practical experience.   The expert report prepared by Mr. Mitchell

8

examines the factual data regarding the accident; the components of the bicycle and pedal system used by the plaintiff; results from the tests he performed on the Shimano clipless pedal system used by the plaintiff at the time of the accident; and the product history of the clipless pedal system, in general, and the Shimano clipless pedal system, in particular.

The first *Daubert* factor, "whether [the expert's theory] can be (and has been) tested" is satisfied by the tests Mr. Mitchell performed on the plaintiff's bicycle. These tests incorporate both his specialized knowledge and his practical experience with the clipless pedal system. Mr. Mitchell's tests measured the force necessary to accomplish both outward and inward pedal release with the clipless pedal system used by the plaintiff at the time of the accident, using standards promulgated by the American Society for Testing and Materials ("A.S.T.M. standards") (Pl.'s Mem., Ex. A at 2-4). While those tests revealed that inward and outward release from the clipless pedal system required similar degrees of force within the normal pedal rotation, Mr. Mitchell opined that an outward motion for release is "essentially universal" because it does not correspond to the normal pedaling motion and thus minimizes inadvertent release (Pl.'s Mem., Ex. A at 4). That opinion is not terribly different from the testimony of plaintiff's own expert, who stated that "a normal release outward is definitely more natural for a rider," and that bicycle riders "always release outward, unless . . . messing around with a cleat for some other reason" (Def.'s Mem., Ex. B, Green Dep. at 51-52).

The fourth *Daubert* factor, "general acceptance" among the relevant scientific community, is also satisfied by Mr. Mitchell's expert report and deposition testimony. Mr. Mitchell's opinion is that the clipless pedal system is designed in a way that allows a cyclist to gain release from the pedals by an outward rotation of the rider's heels (Pl.'s Mem., Ex. A at 2), but is not

9

> specifically designed to release in the event of a fall . . . due to the complexity and variability of the forces involved in the myriad of potential accidents. Rather, the pedals are designed to permit the rider to free himself when confronted with a potential fall.

(Pl.'s Mem., Ex. A at 4). We note that although plaintiff's expert has opined that the shoe should release inwardly during a fall without any conscious effort by the rider, he also has offered the following testimony that is consistent with certain aspects of Mr. Mitchell's opinion: "You cannot disengage during a fall because it happens too fast, there's not enough reaction time, but prior to the fall, sure, he [the rider] has a decision to disengage" (Def.'s Mem., Ex. B, Green Dep. at 61).

Mr. Mitchell's opinion is supported by his discussion regarding the history of the clipless pedal system, in general, and the design and intended function of the Shimano clipless system, in particular. This historical overview incorporates generally accepted knowledge of such systems in the relevant "scientific community" and reflects a sufficient level of intellectual rigor to render the opinion admissible under Rule 702. Mr. Mitchell's explanation regarding the rationale for outward as opposed to inward release is also helpful in clarifying the issues in this case, and thus assisting the trier of fact.

Mr. Mitchell's analysis thus satisfies two of the four *Daubert* factors. The presence or absence of any one *Daubert* factor in an expert analysis is not invariably necessary or dispositive. *Kumho*, 526 U.S. at 141; *see also Smith*, 2000 WL 709895, at * 4 (reversing trial court exclusion of expert testimony that had been based on the absence of peer review). However, in this case, the fact that two of the *Daubert* factors are met is, in the Court's view, sufficient to render Mr. Mitchell's opinion regarding inward pedal release reliable enough to be admissible under Rule 702. Whether Mr. Mitchell's opinion or, instead, Mr. Green's opinion as to what inward release properties the pedal should possess when a bicycle falls carries the day will be for the jury to decide.

10

Plaintiff's arguments about Mr. Mitchell's failure to conduct measurement tests in connection with his opinion that there would not "necessarily" be room to perform an inward release without striking the bicycle frame (Pl.'s Mem., Ex. B, at 65) goes more to the persuasiveness of Mr. Mitchell's opinion than to its admissibility. At the threshold, the Court notes that while testing is often important, it is not "an absolute prerequisite to the admissibility of expert testimony." *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996). Here, Mr. Mitchell has opined that "measurements aren't necessary[,]" because the distance in an inward rotation is "essentially the same distance as outward rotation" or approximately "an inch and a half" which is "a standard amount" (Pl.'s Mem., Ex. B at 66). Here, Mr. Mitchell testified that the opinions also could be verified without measurements: "you just have to get on the bicycle and, I mean, you would see it immediately" (*Id.* at 65). Mr. Mitchell further testified that, in his view, the important factor "is the force, not the distance[,]" because "the leg is at least as important a factor as the . . . heel" when determining whether the leg or foot would strike the bicycle on an inward release (*Id.* at 66). The correctness of Mr. Mitchell's opinions concerning the likelihood of impact with the bicycle frame from an inward release, including the importance placed on the factor of force rather than distance, turn on the resolution of factual questions that are for the jury to decide. *See Smith*, 2000 WL 709895, *3 (*citing Daubert,* 509 U.S. at 595).

## 2. The Pedal Rotation Forces During A Backward Fall.

The plaintiff also challenges the reliability of Mr. Mitchell's conclusion that the "forces exerted on the pedal system in falling backward are generally perpendicular to the pedal" and "the pedals are not intended to release in [a perpendicular] direction as they routinely permit the rider to pedal with an alternation of one foot pushing downward while the other foot pulls upward" (Pl.'s

11

Mem., Ex. A at 4). The plaintiff bases this challenge on his perception of a conflict between Mr. Mitchell's expert report and his deposition testimony.

The expert report utilizes the same tests described above in relation to the inward and outward release of the foot from the pedal. As noted, these tests employed A.S.T.M. standards to specifically measure the degree of force necessary to release the foot in both the inward and the outward positions (Pl.'s Mem., Ex. A at 2-3). Concluding that outward rather than inward release is the intended use for clipless pedals, Mr. Mitchell states that the type of force exerted by a cyclist during a backward fall is "generally perpendicular to the pedal," and "the pedals are not intended to release in that direction as they routinely permit the rider to pedal with an alternation of one foot pushing downward while the other foot pulls upward" (Pl.'s Mem., Ex. A at 4).

The plaintiff argues that while Mr. Mitchell's report stated that perpendicular forces would be exerted on the pedal during a backward fall, he admitted in his deposition that rotational forces also would be applied to the pedal during a fall (Pl.'s Mem. at 4-5, Ex. B at 78-79). Plaintiff argues that this alleged conflict between the expert report and the deposition testimony regarding the type of force exerted on the pedal during a fall renders Mr. Mitchell's opinion unreliable (Pl.'s Mem. at 5).

We disagree. The Court does not view Mr. Mitchell's deposition testimony that "rotational forces" would be exerted to be so in conflict with the statement in his expert report that the forces "generally" would be perpendicular (a statement that contemplates other forces -- including rotational forces -- might also be at play) that it renders the opinion inadmissible. Once again, plaintiff's arguments are better directed to the weight to be given to Mr. Mitchell's opinions–a factual determination for the trier of fact–rather than the admissibility of such opinions–a legal question for the Court.

In sum, the Court finds that the methodology used by Mr. Mitchell to arrive at the challenged opinions is sufficiently reliable to admit at trial. Of course, we express no view as to what weight, if any, will be assigned to those opinions; that will be for the jury to decide. Plaintiff's motion in limine no. 1 is denied.

**B.      Limits on Defendant's Liability (Motions Nos. 2 and 23).**

In motion nos. 2 and 23, the plaintiff seeks to bar the defendant from making certain arguments that, if successful, could allow the defendant to limit or avoid its liability in this action. The parties have stipulated to motion no. 2 with respect to contributory negligence, and as a result, Shimano will not assert at trial that affirmative defense. For the reasons stated below, motion no. 2 is granted in part and denied in part with respect to the defenses of assumption of risk and misuse; motion no. 23 is denied.

### 1.      Assumption of Risk

The plaintiff seeks to "bar Shimano from either arguing, intimating, or questioning witnesses on the issue of whether or not Jeffrey Saad assumed the risk of injury" from use of the Shimano clipless pedal system (Pl.'s Mem. at 5). In *Williams v. Brown Manufacturing Co., Inc.*, 45 Ill.2d 418 (1970), the Supreme Court of Illinois recognized that a plaintiff's conduct can bar recovery in a strict products liability action, stating, ". . . a plaintiff who knows a product is in a dangerous condition and proceeds in disregard of this known danger (often termed 'assumption of risk') may not recover for resulting injuries." *Id.* at 426. The Court there stated that only conduct rising to the level of assumption of risk or misuse of the product would bar a plaintiff's recovery. *Id.* at 425-26.

The *Williams* Court explained that whether a user assumed the risk of injury is "fundamentally a subjective test," the determination of which is ordinarily for the jury. *Id.* at 430. The user's testimony denying any knowledge of the danger is only one factor to be considered. *Id.*

The other relevant factors are ". . . the user's age, experience, knowledge and understanding, as well as the obviousness of the defect and the danger it poses." *Id.* at 431.

In 1980, the Supreme Court of Illinois elaborated on the elements of the defense of assumption of risk. *Thomas v. Kaiser Agricultural Chemicals*, 81 Ill.2d 206 (1980). The Court stated: "[a] plaintiff assumes the risk of a defective product only if he is actually aware of the defective nature of the product and appreciates its unreasonably dangerous character, but chooses voluntarily to act in disregard of such known danger." *Id.* at 213. *See also Walsh v. Emergency One, Inc.*, 26 F.3d 1417, 1422 (7th Cir. 1994) ("[i]n order to 'assume the risk' the plaintiff must have voluntarily and unreasonably used that aspect of the product that was alleged (and proven) to be unreasonably dangerous" and [this] rule "requires us only to ask whether the risk assumed was the same risk as allegedly caused the injuries") (*citing Varilek v. Mitchell Engineering Co.*, 200 Ill.App.3d 649 (4th Dist. 1990); and *Cleveringa v. J.I. Case Co.*, 230 Ill.App.3d 831, 851 (1st Dist. 1992)). *Walsh* reaffirmed that the test is a subjective one, and that mere negligence by the user does not amount to an assumption of the risk. 27 F.3d at 1422. This test requires the Court to determine whether the plaintiff made a "conscious decision to encounter an appreciated risk of harm[,]" and "requires us only to ask whether the risk assumed was the same risk as allegedly caused the injuries." *Id.* (*citing* W. Page Keeton *et al.*, Prosser and Keeton on Torts § 79, at 566 (5th ed. 1984)).

Here, the plaintiff asserts that the defendant cannot prove the elements of the defense of assumption of risk (Pl.'s Mem. at 5-6). *First*, the plaintiff notes that the defendant has not conceded that the product was defective (*Id.* at 5). *Second*, the plaintiff states that the defendant "cannot present evidence that Jeffrey Saad subjectively knew that the pedal system possessed latent design and manufacturing defects that would manifest themselves in a fall" (*Id.*). Finally, the plaintiff states, "there is no evidence that Jeffrey Saad used the Shimano [sic] in blatant disregard of a

14

dangerous condition" (*Id.* at 6). For these reasons, the plaintiff argues, the defense should be stricken.

The defendant responds that "[a]t trial, Defendant will show, based upon Plaintiff's own testimony, that he was an experienced and avid bicyclist who understood and appreciated any alleged dangerous propensities of the clipless pedal system to keep the shoe on the pedal while riding" (Def.'s Opp. Mem. at 4). The defendant then directs this Court's attention to portions of the plaintiff's deposition testimony that assertedly support this conclusion (*Id.* at 4-5), arguing that certain statements allegedly show that plaintiff's injuries were the result of voluntary and intentional assumption of risk, in particular, statements showing that: (1) plaintiff is an experienced bicyclist who has used clipless pedal systems in the past and is familiar with any alleged dangerous propensities of the clipless pedal system (Def.'s Ex. A, Saad Dep. at 10-11); (2) plaintiff had fallen from his bicycle in low-speed conditions while using the Shimano clipless pedal system, and he knew how to and did release both feet from the pedals (*Id.* at 46-47); and (3) despite the low speed of travel at the time of the accident, the plaintiff tried to pop out of the fall by using a pogo-like maneuver, "overcompensated," and ended up going over backward with his bike (*Id.* at 56). The defendant argues that the pogo-like maneuver with his bicycle amounts to a voluntary disregard of any dangerous propensities of the defendant's clipless pedal system (*Id.* at 5).

The defendant denies that a lack of inward release capability renders the pedals unreasonably dangerous. But even if plaintiff proves otherwise, that does not establish that plaintiff, at the time of the accident, knew that an inward release was dangerous. The cited portions of plaintiff's deposition do not contain an admission that he knew the pedals had dangerous propensities. Moreover, the fact that plaintiff was an "avid" bicyclist who previously had accomplished *outward* releases does not necessarily mean that he knew an *inward* release would be dangerous; defendant

15

has not pointed to any evidence that plaintiff previously had attempted an inward release and was unable to effectuate one.

Moreover, the plaintiff testified that he read the service and installation instructions that accompanied the defendant's clipless pedal system before his accident (Def.'s Mem., Ex. A, Saad Dep. Tr. at 25-26; Ex. B, Green Ex. 3), and those instructions state that with use of the "multiple release" SH55 cleats, such as those purchased by plaintiff and worn on the day of the accident, the rider may "[d]isengage the cleat from a pedal by twisting [the] heel in any direction"(*Id.*). A diagram of a pedal and right foot accompanies this language and depicts three arrows indicating motion upward and to the right (or away from the bicycle) (*Id.*). Although the diagram does not include an arrow inward, the language clearly states that release "in any direction" is possible.[1]

Thus, although the plaintiff was not a novice bicyclist (Def.'s Mem., Ex. A, Saad Dep. Tr. at 11, 13, 18-20), there is no evidence that the plaintiff had a special appreciation for the particular danger he alleges caused his injury here, namely, that the clipless pedals might not release on an

---

[1]There are also some written instructions, attached to Mr. Green's deposition transcript, which appear on an internet site, explaining:

> Now that the shoe cleat is attached to the pedal, how do we get it off so we don't twist our limbs into spaghetti? The exit method is not one that comes naturally to a novice. Exit techniques are soon learned after one too many low speed fall overs as the rider strains to remove the foot from the pedal before the rider hits the ground in an embarrassed lump.

> The design of the pedal dictates that the easiest exit is a sideways rotation of the foot to release the rear part of the cleat from the heel retaining clip. This is simply achieved by kicking your foot to the side. The rotation should be in the plane of the pedal (see graphic). During the above mentioned action what happens is the rear part of the shoe cleat rides over the heel retaining posts, while the heel clip is being forced backward as the cleat tries to clear the retaining post.

(*Id.* at 5). There is no evidence that plaintiff read these instructions before the fall. Plaintiff only testified that he read the entire set of service instructions that came with pedals, which is the first two pages of Def.'s Ex. B, Green Ex. 3. *See* Def.'s Ex. A, Saad Dep. Tr. at 25-26.

inward rotation of his heel during a backward fall.[2]  This special appreciation is the key to this defense, because the issue is not whether plaintiff knew that during a fall his feet might not always release from the pedal before he hit the ground -- such knowledge, if it constituted assumption of the risk, would mean that every user of the pedals, once they read the service instructions and rode a bike, assumed the risk of non-release no matter how the failure to release occurred.  That cannot be the standard here.  Rather, to assume the risk, the plaintiff would have had to know that a particular condition or defect rendered the Shimano clipless pedal design unreasonably dangerous, and then attempted to knowingly and voluntarily use the pedal in disregard of that condition or defect.

Thus, Shimano must be able to offer evidence that would reasonably allow a jury to conclude that the risk allegedly assumed (here, attempting to release from the pedal by an inward rotation) is a risk that plaintiff knew of and that caused the injury. *Walsh*, 26 F.3d at 1422.  However, Shimano does not specifically criticize plaintiff's use of the pedal, but instead attacks the use of the "pogo-stick" maneuver.  Even if plaintiff's admitted use of the pogo-stick maneuver to avoid a fall was deemed inappropriate, that would not mean that he knowingly and voluntarily assumed an unreasonably dangerous risk of non-pedal release on an inward rotation of his heel.

The evidence submitted on this motion is not sufficient to persuade the Court that a jury reasonably could find that plaintiff assumed any risks inherent in the defendant's clipless pedal system.  However, because the defendant may have additional evidence not now before the Court that would support such a defense at trial, the Court will not strike the affirmative defense altogether.

---

[2] Although the plaintiff never offered direct testimony on how he attempted to extricate his right foot from the pedal before the fall (Def.'s Mem., Ex. A: Saad Dep. Tr. 58-59), his expert's theory is that the defendant's pedal is unreasonably dangerous, as designed, because it does not permit inward release of the pedal at a sufficiently low level of force when above the lateral plane.  The plaintiff also argues in his trial brief, included in the Final Pretrial Order, that "the pedal system did not release inwardly in such a manner that would have enabled a rider to release his foot to avoid serious injury" (Pl.'s Trial Brief at 18).

17

Plaintiff's motion is granted with respect to his request to bar argument or intimation that the assumption of risk defense is an issue in this case during opening arguments and during trial; the motion is denied with respect to plaintiff's request to bar questioning of witnesses or submission of evidence relevant to this issue. The defendant will be allowed to question witnesses and introduce other relevant and admissible evidence to attempt to prove such a defense (without making use of the phrase "assumption of risk"). If the evidence supports such a defense, the Court will allow the defendant to argue the defense at closing and to submit an instruction to the jury on it.

### 2.     Misuse.

In motion no. 2, the plaintiff argues that "any mention, evidence or reference or jury instruction on Jeffrey Saad's alleged misuse of the Shimano clipless pedal system . . . should be barred" because his use of the defendant's product was foreseeable and, under Illinois law, a foreseeable use cannot be found to be misuse (Pl.'s Mem. at 6-7). The defendant responds that the plaintiff's attempt to "'pop out' of the fall in a pogo-like maneuver is clearly a misuse of the bicycle and the clipless pedal system" (Def.'s Opp. Mem. at 5). In particular, the defendant's theory is that popping out of the fall would apply perpendicular force to the pedals, and the pedals are not designed to release in a perpendicular direction. Consequently, any attempt to release the pedals while applying a perpendicular force to them would be misuse. The defendant argues that the plaintiff's motion in limine should be denied, because the issue of whether the plaintiff's use of the pedal system in this way was foreseeable is a question of fact for the jury (*Id.*).

In Illinois, misuse is an affirmative defense to a strict products liability action that can bar all or part of a recovery for the plaintiff. *Coney v. J.L.G. Industries, Inc.*, 97 Ill.2d 104, 111 (1983) (adopting pure comparative negligence in strict products liability actions); 735 ILCS 5/2-1116 (West 1999) (enacting modified comparative negligence in strict products liability actions). *See also*

18

*Varilek v. Mitchell Eng'g Co.*, 200 Ill.App.3d 649, 666 (1st Dist. 1990); *Suich v. H & B Printing Mach., Inc.*, 185 Ill.App.3d 863, 872-73 (1st Dist. 1989). Misuse is defined as use "for a purpose neither intended nor 'foreseeable' (objectively reasonable) by the defendant." *Williams v. Brown Manufacturing Co., Inc.*, 45 Ill.2d 418, 425 (1970). While the issue of misuse was once considered an aspect of the plaintiff's case, *id.* at 431, misuse is now an affirmative defense in Illinois. *Coney,* 97 Ill.2d at 119; *Varilek,* 200 Ill.App.3d at 666-67; *Suich,* 185 Ill.App.3d at 872-73.

A defendant must prove misuse by demonstrating that the product was used for a purpose neither intended nor foreseeable. *Varilek,* 200 Ill.App.3d at 666-67. In *Varilek,* the Court stated that "[t]he manner in which the particular purpose was being accomplished is not an issue under a theory of misuse." *Id.* Moreover, a defendant may not defend against a products liability suit "on the basis of a misuse that he invited." *Welge v. Planters Lifesavers Co.*, 17 F.3d 209 (7th Cir. 1994).

The question of foreseeability is generally one of fact. *Kerns v. Engelke,* 76 Ill.2d 154, 165 (1979); *King v. Am. Food Equip. Co.,* 160 Ill.App.3d 898, 909 (1st Dist. 1987). Although misuse is an affirmative defense for which the defendant normally bears the burden of production and proof, *see Varilek,* 200 Ill.App.3d at 666-67, the plaintiff has filed a motion in limine seeking to bar this defense as a matter of law; it is therefore plaintiff's burden to prove that there is no evidence showing the plaintiff used the bicycle pedals for a purpose that was unintended or unforeseeable by the defendant.

The defendant's theory of misuse is that the plaintiff misused his bicycle and the Shimano clipless pedal system when he attempted to pop out of his fall by using the bicycle he was riding like a pogo stick, thereby causing injury to himself because the pedals did not release in either a perpendicular or an inward direction. The defendant's theory is based on the defendant's expert

19

report, the plaintiff's deposition testimony, and the medical evidence. We address these categories of evidence in reverse order.

*First,* the medical evidence indicates that plaintiff's ankle twisted as the bicycle fell backward (Def.'s Mem., Ex. C, Dr. Brna Dep. Tr. at 19, lines 13-17). Although that evidence may support an inference that the plaintiff's leg or foot twisted inward, contacting the bicycle frame and preventing release of his right foot from the pedal, standing alone it does not support an inference of misuse.

*Second,* the plaintiff testified that he is an experienced bicyclist who has used clipless pedal systems in the past and is familiar with any alleged dangerous propensities of the clipless pedal system (Def.'s Mem., Ex. A, Saad Dep. Tr. at 10-11); he had fallen off of his bicycle in low-speed conditions while using the Shimano clipless pedal system, and he knew how to and did release both feet from the pedals (*Id.* at 46-47); and, despite the low speed of travel at the time of the accident, he tried to pop out of the fall by using a pogo stick like maneuver, "overcompensated," and ended up going over backward with his bicycle (*Id.* at 56). This testimony, while relevant to the functioning of the pedal system on the day of the accident, also does not support an inference of misuse. It does not tell us why plaintiff's maneuver (much less his manner of release from the pedal) was either not intended or foreseeable by defendant.

*Third,* according to the defendant's expert, a backward fall results in perpendicular forces against the pedals that do not permit the "intended release" of the foot from the pedal in an outward direction (Pl.'s Mem., Ex. A, Mitchell Report at 4 ("[t]he pedals are not intended to release in that direction as they routinely permit the rider to pedal with an alternation of one foot pushing downward while the other foot pulls upward"). This expert opinion sets up a critical issue in the case, namely, whether the Shimano clipless pedal is unreasonably dangerous because it may not

permit release of the foot during a backward fall. But, this is not an issue of misuse, which does not ask whether this design was unreasonably dangerous, but instead whether the plaintiff used the pedal for a reasonably foreseeable purpose.

Thus, in the Court's view, none of the cited evidence would support a jury conclusion that the plaintiff's use of the pedal on the day of the accident was unforeseeable. For instance, there is no evidence that the plaintiff installed the pedals in a way different than the defendant intended, or tied his feet to the pedals, rather than inserting them in the proper way. The defendant has failed to identify any evidence that attempting to disengage from the pedal by an inward motion was unforeseeable. Conversely, there is evidence that could support a contrary conclusion, such as the written directions stating that the rider can disengage from the pedal by twisting the feet "in any direction."

However, because there may be evidence of unforeseeable use of the pedal by the plaintiff that is not before the Court, the Court would rather err on the side of caution and wait until all the evidence is in before deciding whether to strike the defense. Therefore, plaintiff's motion no. 2 is granted in part, and defendant will be barred from mention or reference to the misuse defense in opening statements and during trial. The motion is denied with respect to plaintiff's attempt to bar evidence of the defense and a jury instruction on misuse. Defendant will be allowed to offer admissible evidence of alleged misuse (although defendant may not use the phrase "misuse"), and the Court will determine after that evidence is in whether the defendant is entitled to a jury instruction on the defense. If there is insufficient evidence of misuse at the close of the case, the Court will strike the defense and will not permit a jury instruction on it. *See Varilek,* 200 Ill.App.3d

649, 666-67 (1st Dist. 1990) (trial court should have stricken misuse defense because there was no evidence of misuse).[3]

### 3. Unavoidably Unsafe or Obviously Dangerous Products.

Motion no. 23 asks the Court to bar any comment or argument that the defendant's product was unavoidably unsafe or posed an open and obvious danger (Pl.'s Mem. at 5). In *Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443 (1970), the Illinois Supreme Court stated that a product cannot be found to be unreasonably dangerous if it is unavoidably unsafe and accompanied by adequate warnings. *Id.* at 455-56 (basing the exception on § 402A, comment k, of the Restatement Second of Torts). Thus, a jury conclusion that the Shimano clipless pedal system is unavoidably unsafe could result in plaintiff failing to establish his strict liability claim.

Similarly, a finding that the defendant's product posed an open and obvious danger could allow the defendant to avoid liability in one of two ways. *First*, the Supreme Court of Illinois has established that "[i]njuries are not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product." *Hunt v. Blasius*, 74 Ill.2d 203, 211 (1978). The Illinois courts and the Seventh Circuit have followed this approach. *See, e.g. First National Bank of Dwight v. Regent Sports Corp.*, 803 F.2d 1431, 1436 (7th Cir. 1986); *Smith v. Am. Motors Sales Corp.*, 215 Ill.App.3d 951, 956 (1st Dist. 1991). *Second*, the open and/or obvious nature of the danger could restrict the methods available to a plaintiff to prove that a product is unreasonably dangerous due to a design defect. In *Lamkin v. Towner*, 138 Ill.2d 510, 529 (1990), the Illinois Supreme Court has established two methods to prove a product

---

[3]The Court wishes to make clear that at trial, the parties will be permitted to offer evidence as to the accident sequence. The Court agrees that whatever the ultimate viability of the assumption of risk and misuse defenses, evidence concerning the events leading to the fall as well as the "mechanics of the fall" (Def.'s Opp. at 6) will be relevant to the jury's consideration of causation.

to be unreasonably dangerous due to a design defect -- the "risk-utility" and "consumer contemplation" tests. While a plaintiff cannot succeed in proving a product to be unreasonably dangerous by means of the risk-utility test to a simple product that is obviously dangerous, *see Haddix v. Playtex Family Products Corp.*, 138 F.3d 681, 686 (7th Cir. 1998); *Todd v. Societe BIC*, 21 F.3d 1402, 1412 (7th Cir. 1993); *Scoby v. Vulcan-Hart Corp.*, 211 Ill.App.3d 106, 112 (4th Dist. 1991), that is not a bar to use of the consumer contemplation test. *See Haddix,* 138 F.3d at 685-86. Therefore, a finding that the defendant's product posed an unavoidable or open and obvious danger could allow the defendant in this action to avoid liability under Illinois law. Plaintiff has offered no argument or authority to show why defendant should be barred from attempting to lay the factual predicate for these arguments. Accordingly, motion no. 23 is denied.

## C.    *Evidence of Alternative Designs (Motions Nos. 3, 29, and 30).*

In motion nos. 3, 29 and 30, the plaintiff seeks to bar evidence and arguments related to the existence of alternative designs of clipless pedal systems. For the reasons stated below, those motions are granted.

### 1.    **Existence of Feasible Alternative Design**.

Plaintiff's motion no. 3 requests that the defendant be barred from arguing that the plaintiff has the "burden of proving the existence of feasible design alternatives." The plaintiff argues that while evidence of alternative designs is often considered, the existence of such alternatives is not an essential element of a products liability action (Pl.'s Mem. at 7). Plaintiff argues that because he does not bear the burden of proving that alternate designs exist, the defendant should be barred from arguing that such a burden exists (*Id.* at 8). The defendant did not respond to this motion.

Substantive issues in this case are governed by state rather than federal case law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). To succeed on a strict

23

products liability claim: "[t]he plaintiff[] must prove that . . . injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." *Suvada v. White Motor Co.*, 32 Ill.2d 612, 623 (1965) (*overruled on other grounds*). In *Lamkin*, 138 Ill.2d at 529, the Illinois Supreme Court set forth the methods available to prove that a product is unreasonably dangerous due to a design defect.

> A plaintiff may demonstrate that a product is defective in design, so as to subject a retailer and a manufacturer to strict liability for resulting injuries, in one of two ways: (1) by introducing evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or (2) by introducing evidence that the product's design proximately caused his injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs.

The *Lamkin* decision made it clear that in an appropriate case, the consumer contemplation test and/or the risk-utility test are available to plaintiffs attempting to prove a product to be unreasonably dangerous due to a design defect. *Id.* Thus, while the elements of proof are governed by *Suvada*, the methods of proof are governed by *Lamkin. See also Faucett v. Ingersoll-Rand Mining & Machinery Co.*, 960 F.2d 653, 656 (7th Cir. 1992). An instructive statement regarding the relationship of the plaintiff's burden of proof and evidence of alternative designs may be found in *Ogg v. City of Springfield*, 121 Ill.App.3d 25 (4th Dist. 1984):

> Our supreme court has repeatedly stated that in order to prove a prima facie products liability case, the plaintiff must prove three elements....Our supreme court has never included the existence of a feasible alternative design as one of the elements a plaintiff must prove in order to succeed in a products liability case....Thus, *the existence of an alternative design becomes not an element of proof but instead merely one method of proving one of the elements of proof - - that the product was unreasonably dangerous.*

*Id.* at 36-37 (citations omitted) (emphasis added). *See also Wyant v. J.I. Case Co., Inc.*, 633 F.2d 1254, 1256-57 (7th Cir. 1980) ("[p]roof of the availability of an alternative design which is practical,

24

economical and effective in preventing the injury in question *may be used* to establish the dangerousness of the condition" (emphasis added)).

The Illinois case law regarding the plaintiff's three elements in a products liability action is clear. Those elements do not include the existence of an alternative design. Because Illinois law does not require that a plaintiff prove the existence of a feasible alternative design, motion no. 3 is granted.

### 2.    State of the Art Defense and Evidence.

In motion no. 29, plaintiff requests that the defendant be barred from "asserting a state of the art defense to Plaintiff's strict liability action." The plaintiff argues that the defendant has not affirmatively pled the defense, and that the defense is not allowed in Illinois (Pl.'s Mot. at 6 (no. 29)). The plaintiff is correct. In 1992, the Supreme Court refused to recognize a state of the art defense. *Jackson v. Nestle-Beich, Inc.*, 147 Ill.2d 408, 413 (1992) ("...in Illinois the state of the art defense has never been a defense to strict products liability") (citations omitted). *See also Cunningham v. MacNeal Mem'l Hosp.*, 47 Ill.2d 443, 453-55 (1970). The Court therefore grants motion no. 29.

Motion no. 30 requests that the defendant be barred "from presenting or eluding [sic] to evidence regarding the types of pedals, designs or pedals and clip devices used by manufacturers other than Shimano American Corporation." The plaintiff cites no case law and provides no argument in support of this motion; defendant offers nothing in opposition.

Although the state of the art defense is not allowed, evidence that would support that theory of defense is admissible in certain circumstances. The Seventh Circuit briefly addressed this issue in *Walker v. Trico Manufacturing Co., Inc.*, 487 F.2d 595, 600 (7th Cir. 1973). In *Walker*, the defendant was permitted to offer evidence of alternative designs, even though the state of the art

25

defense was unavailable, because the plaintiff opened the door by presenting evidence of alternative designs used by other manufacturers. *Id.* at 600. Similarly, in *Murphy v. Chestnut Mountain Lodge, Inc.*, 124 Ill.App.3d 508 (1st Dist. 1984), the court admitted the defendant's expert testimony, even though it was state of the art evidence, because the plaintiff had presented expert testimony that the product at issue had an unreasonably dangerous design because alternative designs would have operated more safely. *Id.* at 511, 515. *See also Connelly v. General Motors Corp.*, 184 Ill.App.3d 378, 386-87 (1st Dist. 1989).

For the reasons stated at pp. 39-40, *infra*, of this opinion, the Court will bar plaintiff from offering evidence at trial of feasible alternative designs. As a result, there will be no occasion for defendant to offer "state of the art" rebuttal evidence. Therefore, motion no. 30 is granted.

### D.      *Voir Dire Questions (Motions Nos. 25-28).*

In motion nos. 25-27, the plaintiff seeks a ruling that would allow prospective jurors to be asked certain questions regarding insurance during voir dire. In motion no. 28, the plaintiff seeks a ruling that would allow potential jurors to be asked whether they could award substantial damages for the plaintiff if warranted by the evidence. The plaintiff's only argument regarding these motions is in the form of a case citation to Illinois law, appended at the end of each one-sentence motion in limine. Beyond that, the parties have not made any argument regarding these motions in their written memoranda in support of and in opposition to the motions. The Court denies plaintiff's motion nos. 25-27, and grants motion no. 28.

### 2.      **Insurance Questions**.

In motion no. 25, the plaintiff seeks a ruling that would allow questioning of the venire as to whether they or any of their close relatives or friends currently work or have worked in the insurance claims business or claims-handling business. Similarly, in motion no. 26, the plaintiff

seeks a ruling that would allow questioning prospective jurors about whether they were ever involved in lawsuits or insurance claims as the result of an automobile collision. And, in motion no. 27, plaintiff seeks a ruling that would allow counsel to ask prospective jurors about their interest and relationship to insurance companies.

"From beginning to end, diversity litigation is conducted under federal rules of procedure." *Mayer v. Gary Partners and Co., Ltd.,* 29 F.3d 330, 333 (7th Cir. 1994). This is true with respect to the procedure for voir dire, although it appears that the substance of the voir dire questions in a diversity case is controlled by state law. *See, e.g., Lentner v. Lieberstein,* 279 F.2d 385 (7th Cir. 1960) (applying Illinois law on voir dire question regarding insurance); *Samos v. United Exposition Service Co.,* No. 90 C 5911, 1993 WL 498192 (N.D. Ill. 1993) (same).

The seminal case in Illinois on this issue, *Wheeler v. Rudek,* 397 Ill. 438 (1947), held that voir dire questions directed to prospective jurors on the issue of insurance are permitted so long as the examination was "made in good faith." *Id.* at 441-442. Good faith is required, according to the Illinois Supreme Court, to avoid questions based on mere surmise, and to avoid creating a suspicion in the jurors' minds that the defendant is insured. *Id.* at 441-42 (a good faith basis for insurance questions is required "to protect the defendant against the inclination of jurors to cast the burden of damages, where there is insurance, upon the company whose business it is to insure against such risks"). The "determination of the question of good faith is for the trial court[.]" *Id.* at 442. To ensure good faith for the questions, the trial court is required to hold a hearing, outside the presence of the jury, in which the party seeking to ask the questions presents an affidavit or testimony of witnesses or a combination of both. *Id.* If good faith is established, the questions must be framed in such a way as to avoid the risks identified above. *Id. See also Samos,* 1993 WL 498192, * 2

27

(following *Wheeler*, "no question shall be asked that implies, or in any way indicates, that the Defendant has insurance").

Here, the plaintiff has not offered an affidavit or testimony of witnesses to support his request to ask the insurance related questions identified in motion nos. 25-27. Moreover, the Court believes that the proposed questions likely would suggest to jurors the presence of insurance coverage, and thus would circumvent the parties' agreement and this Court's order barring any reference to Shimano being insured (Def.'s Motion No. 1, *granted* in Court's 03/29/00 order). Thus, plaintiff's motions are denied under the rationale of *Wheeler.* In any event, the standard voir dire questioning into the employment experience and involvement in lawsuits by prospective jurors and their close family members will likely uncover much of the information plaintiff seeks, without needlessly raising the specter of insurance coverage.

## 2.     Substantial Damages Questions.

In motion no. 28, the plaintiff seeks a ruling that would permit questioning prospective jurors as to whether they could award substantial damages if the evidence warranted such a verdict. The plaintiff cites *Kinsey v. Kolber,* 103 Ill.App.3d 933 (1st Dist. 1982), in support of this motion; defendant offers no response.

In *Kinsey,* as in many Illinois decisions, courts have found such a question permissible. *See also DeYoung v. Alpha Const. Co.,* 186 Ill.App.3d 758, 763 (1st Dist. 1989) ("it is proper to inquire whether jurors have fixed ideas about awards of specific sums of money,"); *Scully v. Otis Elevator Co.,* 2 Ill. App.3d 185, 198 (1971) (court held that questions designed to expose any latent prejudice of jurors against large verdicts were proper); *Geehan v. Monahan,* 382 F.2d 111, 115 (7th Cir. 1967) (plaintiff's counsel permitted to ask potential jurors whether they "would have any hesitancy . . . returning a verdict commensurate with the injuries [plaintiff] has, even though it might run many

28

thousands of dollars"). Because the defendant has not cited, and the Court has not found, any case law to the contrary, plaintiff's motion no. 28 will be granted.

### E.     Miscellaneous (Motions Nos. 5, 8, 20, 24, and 31).

In motions nos. 5, 8, 20, 24, and 31, the plaintiff generally seeks to bar what he claims to be prejudicial comments, arguments, instructions, and witnesses. For the reasons stated below, motion nos. 5 and 24 are denied without prejudice; motion no. 8 is granted; and motion nos. 20 and 31 are denied.

#### 1.     Industry Standards Jury Instruction.

The plaintiff's motion no. 5 requests that "the use of a jury instruction that relates to compliance with standards" be barred (Pl.'s Mem. at 2). Neither party cites case law or provides argument in connection with this motion.

The standard for determining whether a party is entitled to a jury instruction is virtually the same in the Seventh Circuit and under Illinois substantive law: it turns upon the evidence that has been presented. The Seventh Circuit has stated that "[a] party, upon proper request, is generally entitled to have its theory of the case presented to the jury, if it is within the issues contested and *if there was evidence to support it.*" *Rogers v. ACF Indus., Inc.*, 774 F.2d 814, 818 (7th Cir. 1985) (citation omitted) (emphasis added). Similarly, the rule in Illinois is that, ". . . each party has the right to have the jury instructed on his or her theory of the case and the trial court must instruct the jury on all issues which it finds, in the exercise of its discretion, have been *raised by the evidence presented.*" *Rios v. Navistar Int'l Transp. Corp.*, 200 Ill.App.3d 526, 535 (1st Dist. 1990) (citation omitted) (emphasis added).

In *Rios*, the court held that a jury instruction permitting the jury to consider compliance with industry standards was properly given. *Id.* at 535. It would therefore be inappropriate to foreclose

29

the possibility of such an instruction in the present case at this time. Plaintiff's motion no. 5 is denied, without prejudice to plaintiff raising the issue at the instruction conference.

### 2.    Burden on the Public.

Plaintiff's motion no. 8 seeks to bar "any comment or reference that the plaintiff's case, damage request, or verdict [sic] places a burden upon the public as a whole and/or is responsible for a high cost of living for the public." In support of this motion, the plaintiff states, "[t]his type of argument was found improper as an unfair prejudice to the plaintiff that does not comport with the 'fair leeway' to be provided an attorney during argument."

The plaintiff cites *Lukich v. Angeli*, 31 Ill.App.2d 20 (1st Dist. 1961), for the proposition that comments and references regarding the effect of a high damage award on the public are barred because they prejudice the jury. The *Lukich* court stated:

> Counsel told the jury, "I feel that it is unfortunately the type of thing that places a burden upon us all. It is the type of thing that . . . causes the increase in the high cost of living." [Plaintiff's] counsel argues the fair leeway rule and cites cases. We do not consider these remarks within that rule and we think its effect was to prejudice the jury.

*Id.* at 30.

The Court agrees that the defendant should be prevented from indicating that the plaintiff's action places a burden upon society or is connected to the high cost of living. Defendant has offered no authority or explanation to show why it should be allowed to make such an argument. Motion no. 8 is granted.

### 3.    Exclusion of Defense Witnesses.

The plaintiff's motion no. 20 seeks to bar the testimony of "all defense witnesses who, while excluded from the courtroom during the proceedings, have been given access to portions of the

written testimony of other witnesses" (Pl.'s Mot. at 5 (no. 20)).[4] The plaintiff makes no argument in support of this motion, citing only the Illinois case of *Gatto v. Curtis*, 6 Ill.App.3d 714 (1st Dist. 1972) (*Id.*). The defendant did not respond to this motion.

In *Gatto*, the trial court entered an order excluding witnesses at the beginning of the trial. 6 Ill.App.3d at 736. The trial court later excluded the testimony of a witness who had portions of previous testimony read to her. *Id.* The appellate court held that this decision was within the trial court's discretion in enforcing the original order to exclude witnesses. *Id.* Based upon the plaintiff's citation to this case, the Court concludes that 1993 study seeks preemptively to establish a punishment for any violation by the defendant of the stipulated exclusion of witnesses from the courtroom.

The plaintiff's reliance upon *Gatto* is misplaced. Illinois law governs the substantive issues in this diversity action, but the exclusion of witnesses is a procedural rather than substantive issue and, therefore, federal law controls the resolution of this motion. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). The parties have stipulated to plaintiff's motion no. 19, and have thereby agreed to "exclude witnesses other than the parties to this action from the courtroom" (Pl.'s Mem. at 4). This exclusion of witnesses is based upon Federal Rule of Evidence 615, which permits the court to " . . . order witnesses excluded so that they cannot hear the testimony of other witnesses . . . ."

The Seventh Circuit has noted that it is within the discretion of a district court to allow a witness to testify despite that witness' knowledge of other testimony. *Hill v. Porter Memorial Hosp.*, 90 F.3d 220, 222-24 (7th Cir. 1996); *see also United States v. Crabtree*, 979 F.2d 1261, 1270 (7th

---

[4]Although the motion does not state that it is the testimony of the defense witnesses that plaintiff seeks to bar, this must be the case, since barring these witnesses is essentially a bar to their testimony.

Cir. 1992) (if a witness has violated an exclusion order, it is within the district court's discretion to allow the witness to testify). The question is whether the excluded witness has tailored his or her testimony to the testimony of another witness. If the answer is yes, Rule 615 is violated, and the testimony of the excluded witness should not come in. *Id.* at 223. If there is no evidence of such tailoring, then it is within the trial court's discretion to allow the testimony because there is no "evidence of prejudice, collusion or willful violation." *See United States v. Gammon,* 961 F.2d 103, 105 (7th Cir. 1992).

In this case, revealing the trial testimony to excluded non-expert witnesses yet to testify would violate the Court's order excluding witnesses.[5] If testimony is revealed to excluded witnesses, the Court obviously will not look kindly on that violation, and will determine the appropriate response if and when such a violation occurs. Motion no. 20 is therefore denied without prejudice.

### 4. Additional Defense Arguments.

Motion no. 24 requests the Court to bar "any comment or argument that any substantial change or alteration in the subject . . . pedal . . . occurred prior to the accident at issue." Plaintiff has failed to provide a factual basis for excluding such an argument. Accordingly, that motion is denied; however, we remind defendant of its obligation only to offer comment and argument that has evidentiary support. Thus, if defendant makes this argument, the Court expects defendant to offer evidence to support it.

Motion no. 31 seeks to bar the defendant from asserting that its product was "as safe [sic] or safer than clipless pedals produced by other manufacturers . . ." The Court views this argument as

---

[5] The Court presumes that neither party intended to bar their respective experts from knowing the trial testimony, as the particulars of that testimony may affect certain opinions. If the parties have a different view, they should bring that to the Court's attention at the pretrial conference.

a reformulation of plaintiff's motions nos. 29 and 30. Accordingly, the Court denies motion no. 31 as moot.

### III.

The defendant, Shimano, seeks a ruling on seven motions in limine (nos. 4, 5, 7, 8, and 10-12). In general, the defendant seeks to bar: plaintiff's expert liability testimony (nos. 7, and 10); failure to warn evidence (no. 5); alternative design evidence (no. 11); certain damages testimony (no. 4); and what defendant considers to be other prejudicial evidence (nos. 8 and 12). Again, we will address each motion by grouping the requests under the broader subject matter categories to which they relate.

**A.      *Plaintiff's Expert Testimony (Motions Nos. 7 and 10).***

In motion no. 10, Shimano seeks to bar plaintiff's expert, James Green, from testifying at trial. Alternatively, if Mr. Green is not completely barred from testifying, in motion no. 7, Shimano seeks to bar him from testifying about any "opinions other than those expressed at [the] deposition." For the reasons discussed below, the Court denies both motions.

**1.      Motion To Bar Mr. Green's Entire Testimony.**

Mr. Green's expert report contains the following opinions: *first,* Mr. Green states that "the causal factor of the injury to the cyclist was the failure of the shoe to release [from the pedal] when the shoe was twisted inward during the accident" (Def.'s Mem., Ex. B, Green Report at 1); *second,* Mr. Green states that the Shimano clipless pedal system was defective because the pedals do not release inwardly when subjected to force outside a perfectly lateral plane (*id.*; *see also* Ex. B, Green Dep., at 46); and *third,* Mr. Green opines that this "poor inward release mode of the Shimano . . . shoe platform system was a direct causal factor of the injury sustained by" the plaintiff (*Id.*).

As was the case with plaintiff's challenge to Mr. Mitchell's opinions, the defendant here does not claim that Mr. Green lacks the expertise necessary to form the opinions he offers, or that the opinions he offers would not assist the jury if the opinions are reliable. Rather, defendant focuses on the alleged lack of reliability of certain of Mr. Green's opinions. Thus, we begin with an explanation of those opinions and their bases.

Mr. Green testified that in 1993, he performed a study of the various clipless pedals to determine the force required to disengage the shoe from the pedal, as well as the distance the foot moved to achieve a release (Def.'s Mem., Ex. B, Green Dep. at 40-42 and Ex. 7 thereto). Mr. Green testified that the 1993 study assessed these measurements in an "absolute lateral plane" (*Id.* at 41), and generally found that the forces required for inward release were the same for each pedal as required for outward release (*Id.* at 42). Mr. Green explained the methodology and equipment used to conduct the 1993 study, and indicated that the mode of analysis was "peer reviewed" (Def.'s Mem., Ex. B, Green Dep. Ex. 8).

Mr. Green used the same equipment and same general methodology to test the release forces and displacement distances for the Shimano pedal involved in the accident in this case (Def.'s Mem., Green Dep. at 43 and Ex. 8). Mr. Green testified that the pedal involved in this case had the same – and acceptable – forces for inward and outward release in the lateral plane (*Id.* at 50). However, Mr. Green testified that he also tested those forces with the pedal outside the lateral plane, which is what he believed more accurately would simulate a fall. In so doing, Mr. Green found that while the release force for an outward release remained in the acceptable range of 12 to15 pounds, the release force for an inward release was much higher – approximately 38 pounds – and unacceptable (*Id.* at 50-51). Mr. Green opined that while a rider of a bicycle generally can exert a release force of 50 pounds in the lateral plane, the release force he found outside the lateral plane of 38 pounds

34

was unacceptable because of the distinction between static force generally used to release from the pedal in the lateral plane and the instantaneous maximum force that would be required to release during an accident (*Id.* at 54-56). While Mr. Green did not perform testing to determine the precise forces that would be experienced during a fall, he explained in general terms the forces that would be at play during a fall (*id.* at 58-61) and during the deposition prepared a diagram that explained the engineering principles on which his analysis of this point was based (Def.'s Mem., Ex. B, Green Dep. Ex. 10).

Defendant argues that Mr. Green's opinion that the Shimano pedal fails to release at a sufficiently low force when the rider's foot is outside the lateral plane is untested and thus unreliable (Def.'s Mem. at 11). Defendant argues that the 1993 study fails to support that opinion, because that study only tested release forces within the lateral plane, and that Mr. Green performed no testing of his theory concerning the instantaneous maximum force that would be exerted during a fall (*Id.*). Defendant argues that even if Mr. Green's opinion is admissible, any reference to the 1993 study should be barred because it only tested pedal release forces inside the lateral plane, and is therefore irrelevant to the opinion that Mr. Green now expresses about the release forces outside the lateral plane (*Id.*). For the reasons set forth below, we reject each argument.

Mr. Green's challenged opinion meets the threshold level or reliability required for admissibility. The methodology Mr. Green used to determine the release forces was the same that was used in the 1993 study, which was peer reviewed and published. The equipment that Mr. Green used for the 1993 study was the same equipment that he used for his testing of the Shimano pedal in this case. Defendant has offered no argument that the methodology and equipment used to reliably measure pedal release forces within the lateral plane would fail to reliably measure the release forces outside the lateral plane.

35

It is true that Mr. Green did not perform testing to verify his analysis about what pedal release forces would be encountered on a bicycle during a fall (rather than on a jig in a workroom), or how the effect of instantaneous maximum forces during a fall would render a pedal release force of 38 pounds unacceptable. However, the case law makes clear that no single factor is invariably applicable or dispositive in determining the threshold reliability of an opinion for admissibility purposes – even testing. *Cummins*, 93 F.3d at 369. In this case, Mr. Green's instantaneous maximum force analysis derives from the application of accepted engineering principles, which he fully disclosed in his deposition. Shimano's motion does not challenge those principles, and does not disclose any testing that Shimano's expert has done to undermine the validity of Mr. Green's analysis.

Moreover, there is no dispute that Mr. Green possesses the qualifications and experience necessary to apply those principles in this analysis. As the Supreme Court has stated, "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho*, 119 S. Ct. at 1178. In this case, Mr. Green's challenged opinion is based on an analysis that utilizes accepted engineering principles. We express no view as to what credibility or weight the jury should or will attach to Mr. Green's opinions. In the circumstances here, the Court finds that Mr. Green's failure to test certain aspects of this analysis is certainly ample fodder for cross examination, but that does not render his opinions inadmissible.

Nor do we find that Mr. Green should be precluded from referring to his 1993 study. The testing that Mr. Green performed to determine the release forces and distances for the Shimano pedal at issue here employed the same methodology and equipment used in the 1993 study, which was peer reviewed and published. Although the specific measurements achieved in the 1993 study are not relevant here, since they were conducted in the lateral plane while Mr. Green's opinions here are

36

based on measurements from testing outside the lateral plane, the 1993 study is nonetheless relevant to show the reliability of the testing procedure Mr. Green employed in this case. Accordingly, defendant's motion no. 10 is denied.[6]

### 2. Motion to Bar Non-Deposition Opinions (Motion No. 7).

In motion no. 7, the defendant also argues that Mr. Green's testimony, if not barred altogether, should be limited to the opinions he expressed in his deposition pursuant to Fed.R.Civ.P. 26(e)(1). The Court disagrees. Rule 26(e)(1) states in relevant part:

> With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty [to supplement or correct previously disclosed information] extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

Rule 26 specifically contemplates that an expert will be able to testify at trial regarding the opinions expressed in both his expert report and his deposition. It would be inappropriate to allow the scope of an expert's trial testimony to turn on what opposing counsel chose to ask at a deposition. Indeed, the Advisory Committee Notes that in some cases an expert report may obviate the need for an expert deposition altogether. Thus, Mr. Green will not be limited solely to the opinions he expressed in his deposition. Mr. Green also may express opinions set forth in his expert report, even if those opinions were not explored in his deposition. Accordingly, the defendant's motion no. 7 is denied.

---

[6]Based on Mr. Green's deposition testimony that the 1993 study did not test pedals outside the lateral plane, the Court will not permit Mr. Green to express an opinion that the other clipless pedals have an acceptable inward release mode while the pedal at issue here does not. While Mr. Green expressed that view in his report (Def.'s Mem., Ex. B, Green Dep., Ex. 8), his deposition testimony establishes that there is no basis for that opinion in the 1993 study. Indeed, plaintiff represents that Mr. Green will not use the 1993 study as a basis for his view (*see* Pl.'s Opp. Mem. at 9), and neither Mr. Green's report nor his deposition offers any other basis for that opinion.

## B.     *Failure To Warn Evidence (Motion No. 5).*

In motion no. 5, the defendant seeks to bar any evidence that "the subject warning labels, technical manual and/or service instructions at issue in this case were insufficient or inadequate." The defendant's motion is premised on the absence of expert testimony from James Green regarding the defendant's failure to warn and/or any other evidence "that the warning labels, technical manual or service instructions were defective in any way or caused or contributed to cause [p]laintiff's injuries" (Def.'s Mem. at 5). The plaintiff, in response, asserts expert testimony is not a prerequisite for admissibility of failure to warn issues at trial (Pl.'s Opp. Mem. at 5-6).

The Court need not resolve this debate concerning the necessity of expert testimony, because the plaintiff did not include a failure to warn claim in the final pretrial order (*see* Final Pretrial Order, Ex. B (Agreed Statement of Contested Issues of Fact and Law)). While a plaintiff may show that a product is unreasonably dangerous by proving either a design or manufacturing defect or a failure to warn, *Haddix*, 138 F.3d at 683, plaintiff's proposed jury instructions advance only a "defect" theory and not a failure to warn theory (*see* Final Pretrial Order, Ex. I-2 (Plaintiff's Proposed Issues Instruction on Count One)).

As a result, any failure to warn claim is waived. The final pretrial order supercedes the pleadings and controls the "subsequent course of the action unless modified by a subsequent order." Fed.R.Civ.P. 16(e). *See also Ryan v. Illinois Dept. of Children and Family Services*, 185 F.3d 751, 763 (7th Cir. 1999) (*citing Vaughn v. King*, 167 F.3d 347, 352 (7th Cir. 1999)). The defendant's motion no. 5 to bar evidence regarding an alleged failure to warn is granted.[7] This ruling, of course,

---

[7]The plaintiff cites *Ford v. Nairn*, 307 Ill.App.3d 296, 298 (4th Dist. 1999), for the proposition that expert testimony is not needed to show a failure to warn. Although the Illinois Appellate Court does not put as fine a point on the issue as does the plaintiff, it is true that the court relied primarily on the deposition testimony of the parties -- rather than experts -- to determine whether there were adequate warnings issued by the manufacturer defendant in that products liability case. Although we believe that expert testimony would be useful in such a case, given the need to

will not bar plaintiff from offering evidence of the Shimano written materials that accompanied the pedal for other relevant purposes, such as to show that the pedals failed to perform as warranted.

**C.    *Alternative Design Evidence (Motion No. 11)*.**

Motion no. 11 requests that the plaintiff be barred from making "any reference to the feasibility of an alternative design for the subject clipless pedal system." The defendant argues that "[p]laintiff's expert, James Green, makes no mention of a feasible alternative design in either his expert report or his deposition testimony" (Def.'s Mem. at 13). The defendant also states, "there is no evidence from the plaintiff as to a feasible alternative design nor is there any testing to support an alternative design" (*Id.*). In particular, the defendant claims that Mr. Green's 1993 testing of various clipless pedal systems is irrelevant because "he only tested the displacement and force necessary to release the foot from the cleat in the *lateral* plane[,]" but Mr. Green's criticism of the Shimano clipless pedal system "pertains only to the force necessary to release the foot from the cleat *above* the lateral plane in the inward direction" (Def.'s Mem. at 9) (emphasis in original). Therefore, the defendant argues that any such evidence should be excluded at trial (*Id.*). We agree.

Under Illinois products liability law, evidence of feasible alternative designs is admissible "if the design alternative was available at the time the defendant's product was manufactured and sold." *Kerns v. Engelke*, 76 Ill.2d 154, 163 (1979). *See also Mahoney v. Roper-Wright Manufacturing Co., Inc.*, 490 F.2d 229, 232 (7th Cir. 1973) ("Illinois . . . permit[s] the introduction of evidence which consists of alternative design feasibility or post-accident design changes). Alternative designs must be feasible at the time the defendant's product was manufactured and sold.

---

provide evidence of the industry's knowledge of the product's dangerous propensity, the nature of the product, and the adequacy of the warning, *see Werckenthein v. Bucher Petrochem. Co.*, 248 Ill. App.3d 282, 289 (1st Dist. 1993), this Court need not resolve that issue for the reasons expressed above.

*Mahoney*, 490 F.2d at 232. In *Kerns,* the Court explained that evidence of "feasibility includes not only the elements of economy, effectiveness and practicality," but it also includes "technological possibilities under the state of the manufacturing art at the time the product was produced." 76 Ill.2d at 164. Such evidence may include lay and/or expert testimony regarding the feasibility of such designs. *Besse v. Deere & Co.,* 237 Ill. App.3d 497, 499, 501-02 (3d Dist. 1992) (holding that plaintiff's lay and expert testimony were sufficient to support the jury verdict for plaintiff). Expert testimony is not required unless necessary to assist the jury in understanding the issues presented by the parties. *Scaccianoce v. Hixon Mfg. & Supply Co.,* 57 F.3d 582, 487 (7th Cir. 1995) ("while expert testimony is . . . common in such cases, it is not essential if the subject can be understood by the ordinary juror . . .").

The plaintiff has not responded to defendant's motion, and thus has pointed to no evidence in the discovery record. As we explained above, Mr. Green's 1993 study of release forces for various pedals in the lateral plane is not evidence of feasible alternative designs, since Mr. Green's criticisms of the Shimano pedal were not based on release forces in the lateral plane (which he found acceptable for both inward and outward release), but rather on the forces for inward release outside the lateral plane. While expert testimony on this subject is not invariably required, here plaintiff has offered no lay testimony or other evidence of alternative feasible design.[8] Motion no. 11 is therefore denied.

---

[8]Mr. Saad testified that a particular type of pedal system, the Look System, allows a rider "to slide in and out" of the pedal more easily than does the Shimano system (Def.'s Mem., Ex. A, Saad Dep. at 13). However, he did not indicate that the Look System provided an easier *inward* release *above* the lateral plane.

40

### D. *Loss of Future Earnings or Earning Capacity Evidence (Motion No. 4).*

In motion no. 4, the defendant has moved to bar any evidence regarding plaintiff's alleged loss of future earnings or diminished earnings capacity on the basis that such evidence would be speculative and contrary to the evidence produced in the case (Def.'s Mem. at 3-4). The plaintiff disagrees; he argues that the evidence of his injuries, the medical testimony regarding his injuries, and the evidence of his past wages at Enterprise Rent-A-Car are sufficient evidence to award damages for loss of future earnings or diminished earnings capacity under Illinois law (Pl.'s Opp. Mem. at 3).

Under Illinois law, "impairment of earning capacity is calculated by deducting the amount plaintiff is capable of earning after his injury from the amount he was capable of earning prior to his injury, and awarding plaintiff the difference." *LaFever v. Kemlite Co.,* 185 Ill.2d 380, 406 (Ill. 1998). Expert testimony is not necessary to establish loss of future earning ability. *Id.* The plaintiff's testimony regarding the nature of his or her injuries and the expected permanent duration of these injuries can be sufficient to take "the question of impaired earning capacity to the jury." *Id.* at 407.

Defendant argues that evidence regarding lost future earnings capacity must be "based in fact" rather than on "speculation" (Def.'s Mem. at 4). True enough. *LaFever,* 185 Ill.2d at 407 ("[w]hile only 'some evidence' is needed to warrant an instruction, inherently that evidence must be reliable and grounded in more than mere possibilities"). *See also Christou v. Arlington Park-Washington Park Race Tracks Corp.,* 104 Ill. App. 3d 257 (1st Dist. 1982) ("[t]estimony as to loss of earnings which is merely speculative, remote or uncertain is improper"). However, in *LaFever,* the Illinois Supreme Court made clear that the standard for admissibility -- the same standard necessary to merit an instruction sending the issue to the jury -- is "some evidence probative of [the]

41

claim," and not whether the loss of future earnings is "reasonably certain" to occur. *Id.* ("[t]he quantum of proof necessary to prevail on a claim is different . . . from  the measure of evidence needed merely to send an issue to the jury").  The trial court need not "be convinced of the persuasiveness of that evidence" before that evidence is admitted for consideration by the jury vis-a-vis a jury instruction. *Id.*

Here, the defendant has not shown that the plaintiff's evidence on this issue is based on mere speculation. The plaintiff intends to offer his own testimony regarding his injuries, medical evidence to support this testimony, and data regarding his lost earnings potential at the job he held at the time of his injury but could not keep due to his injuries. Evidence of plaintiff's excellent work reviews and awards also provides "some evidence probative" of the plaintiff's claim concerning his promotion prospects opportunities at his former job.  And, plaintiff's opposition to this motion in limine also refers to evidence that a manager at Enterprise told  plaintiff he was next in line for a promotion to branch manager, a job that would have provided him with more income than he currently earns.

Assuming that this evidence is offered at trial in an admissible form, the evidence could support submission of the future lost earnings claim to the jury.  Evidence that the plaintiff earned $40,000 per year at the time of his deposition certainly may be offered by defendant to challenge the lost earnings claim, but it is insufficient to bar that claim altogether.  Accordingly, at this juncture, defendant's motion no. 4 is denied, but without prejudice; in addition plaintiff may not offer into evidence any lost future earnings calculations until the Court is satisfied that the evidence warrants submission of that claim to the jury.

42

### E. *Allegedly Prejudicial Evidence (Motion Nos. 8 and 12).*

#### 1. **Defendant's Motion No. 8**

In motion in limine no. 8, the defendant seeks to bar plaintiff "from [a]ny reference to the fact that the designer and manufacturer of the subject components at issue in this case is a Japanese corporation." The defendant argues that "[p]laintiff will seek to introduce such evidence for the sole purpose of prejudicing the defendant by attempting to conjure any bias which individual jurors may have against Japanese corporations" and the issue of the parent corporation's nationality "is wholly irrelevant to the issues in this case and not a material fact . . . ." (Def.'s Mem. at 8). The plaintiff offers no response to this motion.

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevancy and materiality are established by showing that the evidence sought to be admitted tends to prove a fact in controversy or makes a contested matter more or less probable. *Berry v. Deloney*, 28 F.3d 604, 607 (7th Cir. 1994). Even as to relevant evidence, Federal Rule of Evidence 403 requires the trial court to balance the probative value of the evidence against its inflammatory or prejudicial effect, and to exclude evidence where its probative value is substantially outweighed by unfair prejudice. *Needham v. White Labs., Inc.*, 847 F.2d 355, 360 (7th Cir. 1988). Like the defendant, the Court cannot see any possible relevance or materiality in the fact that defendant, while a California corporation, is a subsidiary of a Japanese corporation. Defendant's motion no. 8 is granted.

#### 2. **Defendant's Motion No. 12**

In motion in limine no. 12, the defendant seeks to bar alleged "various other inflammatory and prejudicial remarks" by the plaintiff. The defendant requests the preclusion of argument and

testimony on several topics and requests one cautionary jury instruction. The defendant's motion contains four sub-parts which remain unresolved, each of which will be addressed in turn.

### a.     Motion 12(a)

The defendant seeks to preclude "[s]tatements or arguments intending to inflame or arouse feelings of hostility or resentment against the defendant" (Def.'s Mem. at 14). The Court denies this motion, but not because it intends to allow the types of statements defendant seeks to bar. The motion is denied because it seeks the obvious, without disclosing any particular risk defendant has in mind. Although a new trial was required in *Underwood v. Pennsylvania Railroad Co.*, 34 Ill.2d 367 (1966), where the cumulative effect of improper questions, to which objections were sustained, prejudiced the jury, the Court is unwilling to assume at this point in the proceedings that plaintiff's counsel will engage in improper conduct during the trial. If inflammatory or improper conduct occurs, the Court will then determine the appropriate response. Motion no. 12(a) is denied without prejudice to raising the issue at trial if necessary.

### b.     Motion 12(b).

The defendant next seeks to preclude "[s]tatements or arguments embellishing or inaccurately summarizing plaintiff's medical history" (Def.'s Mem. at 14).   The defendant cites *Gabosch v. Tullman*, 21 Ill.App.3d 908 (1st Dist. 1974), in support of this motion.  However, that decision contains no discussion of the plaintiff's medical history or any embellishments or inaccuracies by the plaintiff's counsel. *Gabosch*, 21 Ill.App.3d 908. Again, the Court is unwilling to assume that plaintiff's counsel will behave improperly at trial.   Nor has defendant identified what "embellishments" or "inaccuracies" it fears plaintiff might offer, or why vigorous cross-examination will not be a sufficient antidote if that occurs. Motion no. 12(b) is denied without prejudice to raising this issue at trial.

44

c.     **Motion 12(d).**

The defendant next seeks to preclude "any statement or argument referencing the size of the corporate defendant, its corporate status or its power and wealth" (Def.'s Mem. at 14). Motion no. 12(d) is granted in part and denied in part. The motion is granted with respect to references to the defendant's wealth and power because the parties have stipulated to defendant's motion in limine no. 3, which bars testimony regarding "[t]he pecuniary circumstances of the parties to this litigation" (Def.'s Motions in Limine at 1).

Motion no. 12(d) is denied with respect to the size and corporate status of the defendant because such facts are not prejudicial in and of themselves. It is fully appropriate for the jury to receive some background information about defendant. The case cited by the defendant, *Babcock v. Chesapeake & Ohio Railroad Co.*, 83 Ill.App.3d 919 (1st Dist. 1979), does not require a different result. In that case, the court found that comments by plaintiff's counsel attempted to evoke a bias by emphasizing that every department of the defendant railroad company had been mobilized against the seven-year old child who had been injured. *Id.* at 932.

In the present case, the Court has already indicated that potentially inflammatory or prejudicial remarks should be challenged at trial. In particular, in providing any background information about defendant's size and corporate status, plaintiff must adhere to the Court's ruling on defendant's motion in limine no. 8 and may not disclose that defendant's parent is a Japanese corporation. Motion no. 12(d) is granted with respect to the defendant's wealth and power and denied with respect to the defendant's size and corporate status.

d.     **Motion No. 12(j).**

In motion no. 12(j), the defendant requests "a cautionary instruction that any dollar figure advanced by plaintiff's counsel does not constitute evidence but merely represents argument which

the jury is entirely free to disregard." Motion no. 12(j) is denied without prejudice because the issue raised by this motion is sufficiently addressed in the plaintiff's proposed jury instruction no. 1, which states:

> Arguments, statements, and remarks of counsel are intended to help you in understanding the evidence and applying the law, but are not evidence. If any argument, statement or remark has no basis in the evidence, then you should disregard that argument, statement or remark.

(*See* Joint Final Pretrial Order, Ex. I-2.) The Court finds that the plaintiff's proposed instruction, or one like it, will cure any problems that motion no. 12(j) seeks to address. Given this instruction, the defendant can surely argue during its opening and closing statements that "any dollar figure advanced by counsel does not," by itself, "constitute evidence." The motion is therefore denied.

## CONCLUSION

IT IS THEREFORE ORDERED THAT plaintiff's motion no. 2 is GRANTED in part and DENIED in part; plaintiff's motion nos. 3, 8, 28, 29, and 30 are GRANTED; and plaintiff's motion nos. 1, 5, 20, 23, 24, 25-27, and 31 are DENIED. The defendant's motion nos. 5, 8, and 11 are GRANTED; defendant's motion nos. 4, 7, and 10 are DENIED; and defendant's motion no.12 is GRANTED in part and DENIED in part with respect to 12(d), and DENIED with respect to 12(a), (b) and (j). The parties are directed to inform their trial witnesses of the matters barred from evidence under this order, and to admonish them to refrain from disclosing information that has been excluded.

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: July 21, 2000**

46